**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| TEKNA FILL, INC., | ) | C.A. No. 7:24-cv-03515-DCC |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S ANSWER TO** |
| | ) | **PLAINTIFF'S COMPLAINT AND** |
| v. | ) | **COUNTERCLAIMS** |
| | ) | |
| NATIVE PET INC., | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Defendant. | ) | |

Defendant Native Pet Inc. ("Defendant" or "Native Pet"), by and through its undersigned attorneys, hereby submits its Answer in response to the Complaint of Plaintiff Tekna Fill, Inc. ("Plaintiff" or "Tekna"). All references to paragraph numbers are to the numbered paragraphs in the Complaint.

### RESPONSE TO NATURE OF THIS ACTION

1. In response to Paragraph 1 of the Complaint, Defendant admits only that Plaintiff purports to seek the relief described in Paragraph 1 but denies that Plaintiff is entitled to any such relief. Defendant denies the remaining allegations in Paragraph 1.

2. Defendant denies the allegations contained in Paragraph 2 of the Complaint.

3. In response to Paragraph 3 of the Complaint, Defendant admits that Tekna demanded payment of certain invoices. Defendant denies the remaining allegations in Paragraph 3.

### RESPONSE TO PARTIES, JURISDICTION, AND VENUE

4. Defendant admits the allegations of Paragraph 4 of the Complaint.

5. Defendant admits the allegations of Paragraph 5 of the Complaint.

6. In response to the allegations of Paragraph 6 of the Complaint, Defendant states that it has removed this case to the United States District Court for the District of South Carolina, Spartanburg Division, and alleges that this Court has jurisdiction over the parties and subject matter of this case. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint and, therefore, denies them.

7. In response to the allegations of Paragraph 7 of the Complaint, Defendant states that it has removed this case to the United States District Court for the District of South Carolina, Spartanburg Division, and alleges that venue is proper before this Court. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint and, therefore, denies them.

## RESPONSE TO FACTS

8. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) of Paragraph 8 of the Complaint and, therefore, denies them.

9. In response to the allegations of Paragraph 9 of the Complaint, Defendant admits only that it sells pet supplements. Defendant denies any remaining allegations in Paragraph 9.

10. Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11. In response to the allegations of Paragraph 11 of the Complaint, Defendant admits only that it was to pay for certain components and packaging and that Defendant provided all ingredients for the manufacture of the products. Defendant denies any remaining allegations in Paragraph 11.

12. In response to the allegations of Paragraph 12 of the Complaint, Defendant admits only that it was to pay for certain components and packaging and that Defendant provided all ingredients for the manufacture of the products. Defendant denies any remaining allegations in Paragraph 12.

13. Defendant denies the allegations contained in Paragraph 13 of the Complaint.

14. In response to the allegations of Paragraph 14 of the Complaint, Defendant admits only that Jodie Fung, Native Pet's Manager of Quality and Sustainability, visited Tekna's manufacturing facility located in Cowpens, South Carolina, for a Manufacturer Audit in November 2022, and that Roberta Roberts, Native Pet's Co-manufacturing Manager, visited the same Tekna facility in March 2023 for a follow-up audit. Defendant denies any remaining allegations in Paragraph 14.

15. Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17. In response to the allegations of Paragraph 17 of the Complaint, Defendant admits only that it retained invoices Tekna sent, if and when Defendant received such invoices, and denies any allegations inconsistent with as much.

18. Defendant denies the allegations contained in Paragraph 18 of the Complaint.

19. Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20. In response to the allegations of paragraph 20 of the Complaint, Defendant admits only that Mr. Barron was in communication with Mr. Nixon between December 2022 and April 2023 on a range of issues, including payment; Tekna's production of defective, leaking products; quality concerns with Tekna's facility; and Tekna's shipping and production delays. Defendant denies any remaining allegations in Paragraph 20.

21. Defendant denies the allegations contained in Paragraph 21 of the Complaint.

22. In response to the allegations of Paragraph 22 of the Complaint, Defendant states that the email referenced in Paragraph 22 speaks for itself and denies any allegations inconsistent with the language and/or intent of that document.

23. In response to the allegations of Paragraph 23 of the Complaint, Defendant admits that it made payments on Tekna invoices. Defendant denies any remaining allegations in Paragraph 23.

24. In response to the allegations of Paragraph 24 of the Complaint, Defendant states that the email referenced in Paragraph 24 speaks for itself and denies any allegations inconsistent with the language and/or intent of that document.

25. The allegations in Paragraph 25 of the Complaint state conclusions of law to which no response is required. However, to the extent any response is required, Defendant denies the allegations in Paragraph 25.

26. In response to the allegations of Paragraph 26 of the Complaint, Defendant states that the letter referenced in Paragraph 26 speaks for itself and denies any allegations inconsistent with the language and/or intent of that document. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26 and, therefore, denies them.

27. In response to the allegations of Paragraph 27 of the Complaint, Defendant states that the document referenced in Paragraph 27 speaks for itself and denies any allegations inconsistent with the language of that document.

28. In response to the allegations of Paragraph 28 of the Complaint, Defendant states that the email referenced in Paragraph 28 speaks for itself and denies any allegations inconsistent with the language and/or intent of that document.

29. In response to the allegations of Paragraph 29 of the Complaint, Defendant states that the email referenced in Paragraph 29 speaks for itself and denies any allegations inconsistent with the language and/or intent of that document.

30. The allegations in Paragraph 30 of the Complaint state conclusions of law to which no response is required. However, to the extent any response is required, Defendant denies the allegations in Paragraph 30.

31. The allegations in Paragraph 31 of the Complaint state conclusions of law to which no response is required. However, to the extent any response is required, Defendant denies the allegations in Paragraph 31.

32. Defendant denies the allegations contained in Paragraph 32 of the Complaint.

33. Defendant denies the allegations contained in Paragraph 33 of the Complaint.

34. Defendant denies the allegations contained in Paragraph 34 of the Complaint.

35. Defendant denies the allegations contained in Paragraph 35 of the Complaint.

36. Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37. The allegations in Paragraph 37 of the Complaint state conclusions of law to which no response is required. However, to the extent any response is required, Defendant denies the allegations in Paragraph 37.

38. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 of the Complaint and, therefore, denies them.

39. Defendant denies the allegations contained in Paragraph 39 of the Complaint.

40. Defendant denies the allegations contained in Paragraph 40 of the Complaint.

## RESPONSE TO THE FIRST CAUSE OF ACTION
### ACCOUNT STATED

41. In response to Paragraph 41 of the Complaint, Defendant incorporates by reference its responses to all preceding Paragraphs of the Complaint, as if fully stated here.

42.     The allegations in Paragraph 42 of the Complaint state conclusions of law to which no response is required.  However, to the extent any response is required, Defendant denies the allegations in Paragraph 42.

43.     Defendant denies the allegations in Paragraph 43 of the Complaint.

44.     Defendant denies the allegations in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations in Paragraph 45 of the Complaint.

46.     The allegations in Paragraph 46 of the Complaint state conclusions of law to which no response is required.  However, to the extent any response is required, Defendant denies the allegations in Paragraph 46

### RESPONSE TO THE SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

47.     In response to Paragraph 47 of the Complaint, Defendant incorporates by reference its responses to all preceding Paragraphs of the Complaint, as if fully stated here.

48.     The allegations in Paragraph 48 of the Complaint state conclusions of law to which no response is required.  However, to the extent any response is required, Defendant denies the allegations in Paragraph 48.

49.     Defendant denies the allegations contained in Paragraph 49 of the Complaint.

50.     The allegations in Paragraph 50 of the Complaint state conclusions of law to which no response is required.  However, to the extent any response is required, Defendant denies the allegations in Paragraph 50.

51.     The allegations in Paragraph 51 of the Complaint state conclusions of law to which no response is required.  However, to the extent any response is required, Defendant denies the allegations in Paragraph 50.

52. To the extent that the prayer for relief and/or "WHEREFORE" paragraph, including the lettered sub-paragraphs that follow, are construed to require a response, Defendant denies that Plaintiff is entitled to any relief in this action, as requested or otherwise; therefore, Defendant denies any allegations contained in the prayer for relief and/or "WHEREFORE" paragraph, including the lettered sub-paragraphs that follow.

## GENERAL DENIAL

53. Defendant denies each and every allegation set forth in the Complaint that is not specifically admitted, modified, or explained hereinabove.

## FOR A FIRST DEFENSE

54. Defendant alleges that Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action against it and should be dismissed pursuant to the provisions of Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

## FOR A SECOND DEFENSE

55. Plaintiff's claims are barred in whole or in part by its failure of performance.

## FOR A THIRD DEFENSE

56. Plaintiff's claims are barred in whole or in part because of its fraudulent misrepresentations.

## FOR A FOURTH DEFENSE

57. Plaintiff's claims are barred in whole or in part by unclean hands.

## FOR A FIFTH DEFENSE

58. Plaintiff's claims may be barred, in whole or in part, by the doctrine of laches.

## FOR A SIXTH DEFENSE

59. Plaintiff's claims are barred or offset, in whole or in part, by Defendant's prior payments and because Plaintiff owes Defendant money damages that exceed Plaintiff's claims.

**FOR A SEVENTH DEFENSE**

60. Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

**FOR AN EIGHTH DEFENSE**

61. Plaintiff's claims are barred in whole or part by Plaintiff's failure to mitigate its damages, if any.

**FOR A NINTH DEFENSE**

62. Plaintiff's claims are barred in whole or in part by the doctrines of estoppel and/or waiver.

**FOR A TENTH DEFENSE**

63. Plaintiff's claims are barred in whole or in part because any and all conduct of Defendant was justifiable, reasonable, authorized by law, and performed in good faith with the belief that such acts were proper, legal, and appropriate.

**FOR AN ELEVENTH DEFENSE**

64. Plaintiff's claims are the result of its own conduct, legal and/or illegal.

**FOR A TWELFTH DEFENSE**

65. Plaintiff's claims may be barred, in whole or in part, by its own actions or fault, which fault exceeds the fault, if any, of Defendant.

**FOR A THIRTEENTH DEFENSE**

66. Defendant reserves the right to add or delete any affirmative defenses and statutory limitations, as investigation, discovery, or trial progresses, and as permitted by the *Federal Rules of Civil Procedure*.

**WHEREFORE,** having fully answered the Complaint, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint or that judgment be entered in Defendant's favor and

against Plaintiff on all claims, award Defendant its reasonable attorney fees and costs, if applicable, and award Defendant such other and further relief as the Court deems necessary and proper under the circumstances.

*     *     *

## COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

Defendant/Counterclaim Plaintiff, Native Pet Inc. ("Native Pet"), for its counterclaims against Plaintiff/Counterclaim-Defendant Tekna Fill, Inc. ("Tekna") alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Native Pet is a corporation incorporated under the laws of the State of Missouri with its principal place of business located at 2315 Locust Street, Saint Louis, Missouri 63103.

2. Tekna is a corporation incorporated under the laws of the State of Wyoming, with its principal place of business located at 140 Metro Drive, Spartanburg, South Carolina 29303.

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) and § 1441(b), because there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. This Court has personal jurisdiction over Tekna, because it maintains its principal place of business, and therefore conducts business, in South Carolina. S.C. Code Ann. § 36-2-802.

5. Venue is proper in this District, because Tekna resides in this District, and a substantial part of the acts and omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b).

## **GENERAL ALLEGATIONS**

*Native Pet Engages Tekna*

6. Native Pet sells pet supplements online and in retail stores. Native Pet employs high standards for its pet supplements, including a commitment to cleanliness, high-quality ingredients, and professional development processes.

7. In November 2019, Native Pet and Tekna (a contract packager of liquids, powders, and creams) signed a non-disclosure agreement "to explore a possible business relationship or transaction" for Tekna to manufacture, package, and provide Native Pet with completed goods for Native Pet to sell through its retail partners such as Amazon, Target, and Chewy.

8. Many months later, in the summer of 2020, Native Pet signed Tekna's "Agreement of Welcome Letter Terms" ("Agreement"), which provided the basic contours and terms of Tekna's manufacturing, packaging, and labeling of Native Pet's products.

9. The Agreement specified that "a Purchase Order [would] be binding to the terms outlined in the Welcome Letter."

10. Payment terms were 50% due upon submission of a purchase order ("PO") and the remainder due upon shipping.

11. At the same time, Tekna requested, and Native Pet submitted, a "General Product Specification Sheet." There, Native Pet indicated that it wanted Tekna to manufacture its Omega Oil supplement for dogs (see image of original packaging below) and specified the packaging, ingredients, and mixing protocol.



12. Native Pet emphasized that "[t]he biotin powder [would] require special attention to make sure it [was] uniformly distributed." To do so, Native Pet explained that biotin had to be "thoroughly pre-mix[ed] . . . with fish oil in a small blender, [and] then mix[ed] . . . in [a] larger blender for each batch."

13. Tekna began manufacturing Native Pet's Omega Oil supplement on or about April 2021, with Native Pet supplying all raw material ingredients, components, and packaging.

14. In an October 2021 email exchange, Native Pet's founder, Mr. Barron, stressed to Tekna's Managing Director, Mr. Nixon, the critical importance of "maintain[ing] ship date expectations . . . to prevent any stock outs" (*i.e.*, when a product's inventory is depleted faster than it can be replenished) to avoid lost sales.

15. In May 2022, Native Pet provided its new packaging design to Tekna and agreed that Tekna would supply the packaging ("tins") and components ("pumps") using their network of packaging suppliers in China.

16. Despite Tekna's delays with digital proofs and imaging—Native Pet submitted a final packaging design (see new design below) to Tekna's supplier in August 2022.

11



*Tekna's Delays Cause Native Pet to Lose Sales*

17. On September 20, 2022, Native Pet submitted Purchase Order 646 ("PO 646") with a "Delivery Date" of November 20, 2022, consisting of 45,000 tins and 45,000 pumps with the new packaging design (see previous image).

18. On September 21, 2022, Native Pet paid Tekna over $8,000 for the packaging mold.

19. The next day, Native Pet paid Tekna 50% upfront on PO 646—over $30,000—with the expectation that the products would be delivered to Tekna's Cowpens facility by November 20, 2022, which was the agreed upon timeline.

20. Accordingly, Native Pet paid the balance of PO 646 on November 22, 2022.

21. The execution of PO 646 was critical to Native Pet's retail success that year around the holiday season and beyond.

22. But by early December 2022, Tekna had missed the November delivery date and grew increasingly unresponsive to Native Pet's requests for updates on the shipping timeline,

which was critical, as Native Pet was launching its new brand (see previous image) at Target Corporation nationwide the following month, in January 2023.

23. Some of the tins from PO 646 eventually arrived after the holidays in January 2023, which was after Native Pet incurred the additional expense—over $8,000—of airfreight from China.

24. As a result of PO 646's significant delays and Tekna's lack of communication, and in order to secure its 2023 customer commitments to Amazon, Target, and Chewy, Native Pet secured a secondary supplier for tins and pumps.

25. To avoid further lost sales, Native Pet incurred approximately $170,000 in air freight costs to ship tins from its new supplier. This was the direct result of Tekna's delays.

26. On January 20, 2023, Native Pet issued Work Order 474 ("WO 474") for Tekna to produce Native Pet's Omega Oil supplement (*i.e.*, Tekna would fill the tins and seal them with the pumps, thereby producing finished goods).

27. WO 474 provided a production date deadline of February 28, 2023.

28. Native Pet shipped Tekna all the raw ingredients for WO 474 and planned to use tins and pumps from PO 646.

29. But when WO 474 was due, Tekna informed Native Pet that it did not, in fact, have the pumps for the tins—the same pumps ordered in PO 646 nearly six months earlier.

30. In text messages with Mr. Nixon, Mr. Barron stated that it was "unacceptable to not have these . . . pumps" six months after they were ordered, and that the "situation [was] dire and ha[d] had a big impact on [Native Pet's] sales."

31. Mr. Nixon responded that "[a]ny deficiencies in deliveries [would] be credited to you."

13

32. On January 30, 2023, Native Pet had also issued Purchase Order 772 ("PO 772") for tins and pumps.

33. Native Pet wired a down payment to Tekna—over $35,000—and explicitly noted that "PO 772 assumes a hard confirmation of Feb 28th 'sail date' that the manufacturer will commit to."

34. To Native Pet's knowledge, PO 772 was never delivered to Tekna's facility.

35. Tekna never refunded Native Pet's $35,000 down payment.

36. Tekna's complaint appears to ignore Native Pet's $35,000 payment on PO 772 and seems to include the balance of PO 772 as damages, even though the PO was never completed.

37. Tekna's egregious delays were underscored by Mr. Nixon's directive to Mr. Barron that Native Pet should "put desired delivery dates on the PO[s] . . . to ensure that there are no misunderstandings."

38. Tekna's delays caused Native Pet a significant number of lost orders with Amazon and Chewy—conservatively estimated at $220,000 in lost orders.

39. Losing those orders also caused Native Pet reputational and brand damage.

*Tekna's Inadequate Facility Standards and Production*

40. Native Pet requires its manufacturing partners to meet National Animal Supplement Council (NASC) standards for their quality programs.

41. As part of its commitment to high standards, Native Pet audits its partners' facilities.

42. In late November 2022, Native Pet sent its Manager of Quality and Sustainability, Jodie Fung, to visit Tekna's manufacturing facility located in Cowpens, South Carolina, for a Manufacturer Audit.

43. Ms. Fung's report found "major documentation deficiencies" at Tekna's facility and recommended widespread corrective action, especially around facility and equipment cleaning and maintenance logs.

44. The report also noted that "[n]o pest control records were available."

45. Under procedural changes needed, the report stated that the auger, which is used for mixing, needed a "[d]edicated location . . . to rest between use (*off of floor*)." (Emphasis added.)

46. In March 2023, as a follow-up, Native Pet sent its Co-manufacturing Manager, Roberta Rogers, to visit Tekna's manufacturing facility.

47. Ms. Rogers found dead vermin in water supplies, overflowing pest traps just outside the production facility, and no actual pest control mechanisms in the production room.

48. Photos from Ms. Rogers's site visit show an outdated pest control log from 2020 and a trap with what appears to be decomposing rodent remains near the production area.

49. Native Pet also learned that Tekna failed to follow the proper mixing protocol as outlined in the General Product Specification Sheet and, instead, poured ingredients together without any agitation, which negatively impacted the quality of the product.

50. Additionally, Tekna's finished products (*i.e.*, the Omega Oil supplement) were routinely leaky, dented, or otherwise defective.

51. Native Pet observed these issues upon receipt and detailed these defects and expressed concern in writing to Tekna.

52. Native Pet had to manage the risk of leaky products by foregoing business with Amazon and Chewy—Native Pet's two largest sales channels—because Tekna's defective packaging would not survive those retailers' handling. Instead, Native Pet had to hope that, if handled with extreme care, the packaging would survive the journey to Target stores.

## FIRST COUNTERCLAIM
### (Breach of Contract)

53. The above allegations are realleged and incorporated as if fully set forth herein.

54. The Agreement, consisting of the Agreement of Welcome Letter Terms, Welcome Letter, General Product Specification Sheet, POs, and WOs, constitutes a valid and enforceable contract between Native Pet and Tekna.

55. Native Pet performed and satisfied the obligations it owed Tekna under the Agreement, including payments on POs 646 and 772, as well as providing Tekna with mixing protocols for the Omega Oil supplement.

56. Pursuant to the Agreement—specifically PO 646—Tekna provided a delivery date of November 20, 2022, for 45,000 tins and 45,000 pumps.

57. Tekna breached the Agreement by failing to meet that delivery date, as the tins did not arrive until January 2023 or later and the pumps did not arrive until sometime in late March 2023.

58. Pursuant to the Agreement—specifically PO 772—Tekna committed to a sail date (*i.e.*, shipping date) of February 28, 2023.

59. Tekna breached the Agreement by failing to meet that shipping date, and to Native Pet's knowledge, the contents of PO 772 were never delivered to Tekna's facility.

60. Tekna also breached the Agreement by failing to follow Native Pet's mixing protocols as outlined in the General Product Specification Sheet.

61. Tekna's breaches caused Native Pet to lose a substantial amount of retail orders and sales and caused Native Pet reputational and brand damage.

62. As a direct and proximate result of Tekna's material breaches of contract, Native Pet has suffered damages in an amount to be determined at trial but in no event less than $390,000.

## SECOND COUNTERCLAIM
### (Implied Warranty of Merchantability)

63. The above allegations are realleged and incorporated as if fully set forth herein.

64. Tekna holds itself out as specializing in packaging and manufacturing liquids, powders, and creams.

65. Native Pet entered into an Agreement with Tekna under which Tekna would manufacture and sell completed goods to Native Pet—specifically the Omega Oil supplement.

66. Due to documented leaking issues, the goods produced by Tekna were not merchantable at the time of sale.

67. Native Pet lost sales due to the leaking products Tekna produced resulting in damages from lost profits as well as reputational and brand damage.

68. Tekna's defective products proximately caused Native Pet damages.

69. Native Pet gave timely notice of the leaking products to Tekna.

70. As a direct and proximate result of Tekna's breach of the implied warranty of merchantability, Native Pet suffered damages in an amount to be determined at trial and irreparable harm to Native Pet's reputation and brand.

## THIRD COUNTERCLAIM
### (Fraudulent Misrepresentation/Inducement)

71. The above allegations are realleged and incorporated as if fully set forth herein.

72. Tekna represented that its facilities were fully inspected and complied with standards related to cleanliness, maintenance, and operations.

73. However, when Native Pet representatives visited Tekna's facility, they found those representations to be false.

74. Because Native Pet adheres to high standards of quality, cleanliness, and production, including NASC standards for quality programs, Tekna's misrepresentations were material to Native Pet's business.

75. Tekna knew its representations were false or showed a reckless disregard for the truth, as it was missing relevant maintenance and pest logs and documentation to support its representations.

76. Tekna intended that Native Pet act upon its representations and engage Tekna for the manufacture and production of Native Pet products.

77. Native Pet was unaware of the falsity of Tekna's representation until Native Pet sent its own representatives to inspect Tekna's facility.

78. Native Pet was justified in relying on Tekna's initial representations.

79. As a direct and proximate result of Tekna's misrepresentations, Native Pet engaged Tekna, rather than another packaging manufacturer that actually employed high-quality standards, and suffered damages in the form of delays, unsatisfactory product, and reputational and brand damage.

## **PRAYER FOR RELIEF**

WHEREFORE, Native Pet respectfully requests the Court to award it the following relief:

A. That judgment be entered in its favor and against Tekna for all damages to which Native Pet is entitled under the parties' business relationship agreement and applicable law;

B. Reasonable attorneys' fees and costs as permitted by the parties' business relationship agreement and/or applicable law;

C. Pre- and post-judgment interest; and

D. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Native Pet demands a trial by jury on all issues so triable.

Dated:  July 11, 2024.

        */s/ C. William McGee*
        C. William McGee (Fed. ID No. 5783)
        William P. Maurides (Fed. ID No. 13289)
        Gallivan, White & Boyd, P.A.
        55 Beattie Place, Suite 1200
        P.O. Box 10589 (29603)
        Greenville, SC 29601
        Telephone: (864) 271-9580
        Facsimile: (864) 271-7502
        bmcgee@gwblawfirm.com
        wmaurides@gwblawfirm.com


        Kevin C. McAdam (*Application for pro hac vice admission forthcoming*)
        Jason A. Pedraza (*Application for pro hac vice admission forthcoming*)
        Holland & Hart LLP
        555 17th Street, Suite 3200
        Denver, CO 80202
        Tel.: (303) 295-8267
        Email: kcmcadam@hollandhart.com
                japedraza@hollandhart.com

        ***Attorneys for Defendant/Counterclaim Plaintiff Native Pet Inc.***